UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-212

PATRICIA FUQUA                                              PLAINTIFF

v.

UNITED STATES OF AMERICA                            DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court upon Defendant's Partial Motion to Dismiss (Docket #9). Plaintiff has responded (Docket #13). Defendant has replied (Docket #18). This matter is now ripe for adjudication. For the following reasons, Defendant's Motion is GRANTED.

## BACKGROUND

Plaintiff Patricia Fuqua is the owner of a 53.01 acre tract of land located below a new flight path into the Fort Campbell airport in Christian County, Kentucky. On December 14, 2007, the government filed an action pursuant to Federal Rules of Civil Procedure 71A, seeking to condemn certain portions of that land. *See United States v. 20.67 Acres, et al.*, No. 5:07-cv-00207. On December 21, 2007, the Court issued an order condemning the property and ordering possession of said property to be immediately surrendered, to the extent of the estate condemned as described in the Declaration of Taking filed by the government. The Declaration of Taking described the estate taken as a "perpetual and assignable easement required by the government, within the land area, that comprises the Approach-Departure Clearance Surface for the establishment, maintenance, operation of a restrictive use area for the operation of aircraft to and from the airfield known as Campbell Army Airfield." The amount of compensation owed to Plaintiff has yet to be determined by a jury.

Plaintiff filed this action on December 21, 2009, seeking a declaration of rights and

injunctive relief. Plaintiff argues that two of the restrictive covenants imposed by the easement require further explanation or definition. Those two restrictions grant the Army the following rights:

> (5) To regulate or prohibit light emissions, either direct or indirect (reflective) and ambient, which might interfere with pilot vision.
>
> (6) To prohibit electrical or radio emissions which would interfere with aircraft and aircraft communications systems, aircraft navigational equipment or Air Traffic Control communication and radar systems.

Declaration of Taking, *United States v. 20.67 Acres, et al.*, No. 5:07-cv-00207, p. 7. Plaintiff alleges that because no objective standard exists by which to judge the limitations of these two restrictions, Plaintiff remains unaware of the extent of the United States' interest in her property. Because of this ambiguity, Plaintiff asserts she has clouded title and cannot make full use of her property.

On March 26, 2010, the government filed a partial motion to dismiss Counts I, II, and III of Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3). The Court now considers whether dismissal of Counts I, II, and III is appropriate.

## STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides that a party may file a motion asserting "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is always a threshold determination," *Am. Telecom Co. v. Leb.*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)), and "may be raised at any stage in the proceedings," *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for

jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Steel Peel Litig.*, 491 F.3d 320, 330 (6th Cir. 2007). Where there is a factual attack, the Court must "weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id.* "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Bauer v. RBX Indus. Inc.*, 368 F.3d 569 (6th Cir. 2004).

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 1965 (internal citation and quotation marks omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the

grounds upon which it rests. *Id.* at 1965. Additionally, "the conclusory nature of particular allegations cannot alone justify dismissing a complaint." *Back v. Hall*, 537 F.3d 552, 558 (6th Cir. 2008) (dismissal not appropriate although one essential element of the claim was pled in a conclusory manner).

## DISCUSSION

As related to Counts I, II, and III, Plaintiff's complaint asks the Court to adjudge, declare, and order the following:

> A.) . . . that the application of Restrictive Covenants [sic] No. 5 prohibits, in perpetuity, all light emissions, either direct or indirect (reflective), and ambient, from the 20.67 acres, when used for a commercial and/or industrial use of the surface 20.67 acres; and,
>
> B.) . . . that the application of Restrictive Covenant No. 6 prohibits in perpetuity, all electrical or radio emissions from the 20.67 acres when used for a commercial and/or industrial use of the surface of the 20.67 acres; and,
>
> C.) . . . that "Fort Campbell and its agents" review of any lighting plan submitted to it is solely limited to the lighting plans compliance with the terms of Oak Grove Ordinance No. 2007-18 . . . .

First Amended Complaint, p. 11-12. Plaintiff claims that subject matter jurisdiction exists under 28 U.S.C. § 2409a ("Quiet Title Act") and Kentucky Revised Statutes § 411.120, or in the alternative, 28 U.S.C. § 1491 ("Tucker Act").

Under the Quiet Title Act, "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a). The Quiet Title Act is "the exclusive basis for jurisdiction over suits challenging whether the United States holds title to real property." *Burlison v. United States*, 533 F.3d 419, 424 (6th Cir. 2008) (citing *United States v. Mottaz*, 476 U.S. 834, 841 (1986)). The Act "provides a specific

waiver of [sovereign] immunity in quiet title actions . . . ." *Vincent Murphy Chevrolet Co., Inc. v. United States*, 766 F.2d 449, 450 (10th Cir. 1985). It is intended to "settle actual disputes about who owns what land. It is not a statute which permits a court to reform deeds." *United States v. Skorepa*, 2005 WL 3634605, *6 (N.D. Ohio 2005). "If the plaintiff prevails, he can recover the land wrongly held by the United States." *Cadorette v. United States*, 988 F.2d 215, 223 (1st Cir. 1993).

The government's argument rests on its assertion that Plaintiff is asking the Court to alter the plain language of the avigation easement, rather than challenging whether the United States actually holds title. The government points out that title acquired through condemnation cannot be challenged under the Quiet Title Act because a condemnation action "give the United States title to the property 'good against the world.'" *Saylor v. United States*, 315 F.3d 664, 670 (6th Cir. 2003) (quoting *Norman Lumber Co. v. United States*, 223 F.2d 868, 870 (4th Cir. 1955)). The Sixth Circuit found that the Quiet Title Act's "plain language . . . clearly limits its scope to adjudications in which the title or ownership of real property is in doubt." *Id.*; *accord Cadorette*, 988 F.2d at 223. Therefore, any challenge as to the scope of an easement is not a challenge to title but rather an attempt to reform the deed.

In contrast, Plaintiff asserts that Counts I, II, and III are properly brought under the Quiet Title Act because there is a dispute between the parties to clarify what property rights each specifically owns. Because of the ambiguous language of the restrictive covenants, Plaintiff argues that she is unable to determine the extent of her estate. Plaintiff urges the Court to interpret this conflict as a dispute over what each party owns, not as any attempt at reformation. Plaintiff cites to *United States v. Austin Two Tracts, L.P.*, 239 F. Supp. 2d 640 (E.D. Tex. 2002),

in support of her argument that a party may bring an action under the Quiet Title Act to clarify property rights. The court in *Austin Two Tracts* held that there was no jurisdiction under the Quiet Title Act to reform a flowage easement because "there is simply no dispute between the parties as to what estate and land each one owns." *Id.* at 644. Plaintiff argues that such a dispute exists in this case.

Neither the Court nor the parties are able to find case law that is directly on point as to whether ambiguous language in a restrictive covenant is actionable under the Quiet Title Act. What the Court must determine is whether this issue is an actual dispute over title itself. *Saylor*, 315 F.3d at 670. The case law is clear that a dispute must be in regards to an ownership interest. *See, e.g.*, *Landow v. Carmen*, 555 F. Supp. 195, 197-98 (D. Md. 1983) (citing *Fulcher v. United States*, 632 F.2d 278 (4th Cir. 1980); *Key v. Wise*, 629 F.2d 1049 (5th Cir. 1980); *Amoco Production Co. v. United States*, 619 F.2d 1383 (10th Cir. 1980); *Prater v. United States*, 618 F.2d 263 (5th Cir. 1980); *Kinscherff v. United States*, 586 F.2d 159 (10th Cir. 1978); *King v. United States*, 585 F.2d 1213 (4th Cir. 1978); *Sault Ste. Marie v. Andrus*, 458 F. Supp. 465 (D.D.C. 1978); *Hatter v. United States*, 402 F. Supp. 1192 (E.D. Cal. 1975)). Further, "[t]he dispute must not merely concern 'title to real property' in the abstract, but must concern the quality of title between the plaintiff and the United States . . . ." *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999).

No dispute exists over the validity of the easement. When the government was granted an easement by this Court in the condemnation proceeding, the United States obtained title "'good against the world.'" *Saylor*, 315 F.3d at 260 (quoting *Norman*, 223 F.2d at 870). Nor is there a dispute over the fact that the restrictions imposed by the easement are property rights of

the United States.  Plaintiff is not arguing that the government does not have the right to impose these restrictions.  Rather, Plaintiff wants the Court to expand the government's rights to include restrictions on *all* light, electrical, and radio emissions.  This may be an issue of interpretation, but the Court cannot classify Plaintiff's argument as a dispute over ownership.  In fact, it is unclear if the interests of the two parties here are truly adverse.  Although the Court is sympathetic to Plaintiff's position, the Court cannot retain jurisdiction without an express waiver of sovereign immunity.  *See, e.g.*, *Soriano v. United States*, 352 U.S. 270, 276 (1957).  The Court does not believe Counts I, II, and III present a proper dispute over title which would grant the Court jurisdiction under the Quiet Title Act.

In the alternative, Plaintiff urges the Court to find subject matter jurisdiction under 28 U.S.C. § 1491 ("Tucker Act").  "The Tucker Act provides jurisdiction in the United States Claims Court for any claim against the Federal Government to recover damages founded on the Constitution, a statute, a regulation, or an express or implied-in-fact contract."  *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 11-12 (1990).  A district court has concurrent jurisdiction if the amount claimed does not exceed $10,000.  *United States v. Cundiff*, 555 F.3d 200, 216-17 (6th Cir. 2009).  It is unclear in this case whether Plaintiff is seeking any monetary damages, and Plaintiff appears to admit this in her response brief.  Further, the companion case in this matter, *United States v. 20.67 Acres, et al.,* No. 5:07-cv-00207, will determine the amount of just compensation to which Plaintiff is entitled.  Plaintiff's Counts I, II, and III clearly seek a declaration by the Court of the respective rights of the parties, and the Court cannot discern any additional monetary damages sought.  Therefore, the Court finds that Counts I, II, and III are not properly brought under Tucker Act jurisdiction.

Finally, both parties acknowledge that the Declaratory Judgment Act cannot serve as an independent basis for federal subject matter jurisdiction. *See Heydon v. MediaOne of Southeast Michigan, Inc.*, 327 F.3d 466, 470 (6th Cir. 2003). Finding no other basis for jurisdiction, the Court grants the motion to dismiss as to Counts I, II, and III.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is GRANTED.

An appropriate order shall issue.